**Date Signed:**
**June 13, 2018**



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>TROY ALAN LYNDON,<br><br>    Debtor. | Case No. 12-00683<br>Chapter 7 |
| TROY ALAN LYNDON,<br><br>    Plaintiff,<br><br>vs.<br><br>SECURITIES EXCHANGE COMMISSION,<br><br>    Defendant. | Adv. Pro. No. 18-90005<br><br>Re: Docket No. 8, 12, 19, 22, 32 |

## MEMORANDUM OF DECISION ON MOTION TO DISMISS

The question presented is whether the plaintiff, Troy Alan Lyndon, can discharge the debt he owes to the defendant, the Securities Exchange Commission ("SEC"), under a judgment entered by the district court.

Lyndon has filed a complaint against the SEC seeking discharge of the debt

owed to the SEC.[1] The SEC seeks dismissal of the complaint.[2] I will grant the motion; as a matter of law, Lyndon's debt to the SEC is nondischargeable under sections 523(a)(19) and (7) of the Bankruptcy Code.

# I. BACKGROUND

### Relevant Facts

This section is based on the allegations of the complaint, which I must accept as true for purposes of this motion, and materials in the record of the district court action described below, of which I can take judicial notice.

On September 23, 2013, the SEC filed a civil action against Lyndon in the United States District Court, District of Hawaii, alleging that Lyndon violated the federal securities laws.[3]

About a month after the SEC filed the complaint, Lyndon signed a document in which he consented to entry of a judgment granting a permanent injunction and other relief ("Consent").[4] Lyndon agreed, "without admitting or denying the allegations of the complaint," to the entry of a judgment (the "Permanent

---

[1] Dkt. 2.

[2] Dkt. 8, 12.

[3] *Securities and Exchange Commission v. Troy Lyndon, et al.*, (Civil No. 13-00486 SOM-KSC, D. Hawaii). This court takes judicial notice of the record in the district court case pursuant to Fed. R. Evid. 201.

[4] Dkt. 2 at 6-11.

Injunction") that (i) permanently enjoined him from violating certain federal securities laws; (ii) prohibited him from acting as an officer or director of an issuer of registered securities; and (iii) prohibited him from participating in the offering of penny stocks.

Lyndon also agreed to the entry of a money judgment for "disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 20(d) of the Securities Act, 15 U.S.C. §77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. §78u(d)(3)." Lyndon agreed that these amounts would be determined by the district court based on a motion by the SEC, and that, with respect to any such motion, Lyndon would not (i) argue that he had not violated the federal securities laws that were the subject of the complaint, or (ii) challenge the validity of the Consent or the Permanent Injunction. He also agreed that, for purposes of the motion, the allegations of the complaint would be deemed true.

Lyndon acknowledged in the Consent that he was entering into the agreement voluntarily, and that no "threats, offers, promises, or inducements of any kind have been made" by the SEC to induce Lyndon to enter into the Consent. Lyndon also acknowledged that the district court's entry of a permanent injunction may have collateral consequences under federal or state law.

Finally, Lyndon agreed that he "will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the

3

Complaint or creating the impression that the Complaint is without factual basis, [and] will not make or permit to be made any public statement to the effect that [Lyndon] does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations, witout also stating that [Lyndon] does not deny the allegations . . . ."

Lyndon alleges that he signed the Consent under duress, because he could not afford to hire counsel, and that he relied on the agreement that he could conduct discovery before the district court entered the disgorgement judgment. He was confident that the evidence would show that there were no "ill-gotten gains."

Based on that Consent, the district court entered the Permanent Injunction against Lyndon on November 1, 2013.[5]

Subsequently, Lyndon filed multiple motions in which he (among other things) attempted to withdraw or invalidate the Consent. The district court denied all of these motions.

On March 13, 2014, the SEC moved for summary judgment to determine its monetary claims against Lyndon. Lyndon filed objections to the motion, continued his efforts to invalidate the Consent, and unsuccessfully sought disqualification of the presiding district judge.

---

[5] Dkt. 2 at 12-19.
4

On August 11, 2014, the district court granted the SEC's motion for summary judgment, and ordered Lyndon to pay $3,251,169 in disgorgement of ill-gotten gains, $289,897.18 in prejudgment interest, and a penalty of $150,000. On August 21, 2014, the district court entered judgment for those amounts (the "Money Judgment").[6]

Lyndon appealed the Money Judgment to the Ninth Circuit Court of Appeals and the Court of Appeals affirmed the district court's decision.

### Bankruptcy Proceeding

In the meantime, on March 30, 2013, Lyndon filed a chapter 7 bankruptcy petition. On July 23, 2013, Lyndon was granted a discharge.

On February 5, 2018, the court granted Lyndon's motion to reopen the bankruptcy case. Lyndon filed the complaint seeking to discharge his debt to the SEC on February 7, 2018.

The SEC seeks dismissal of the complaint on the grounds that Lyndon cannot establish that his debt was discharged under the Bankruptcy Code.

## II. STANDARD

The SEC argues that the court should dismiss the complaint under Fed. R. Civ. P. 12(b)(6), which applies to this adversary proceeding by virtue of Fed. R. Bankr. P.

---

[6] Dkt. 9-2.

U.S. Bankruptcy Court - Hawaii    #18-90005    Dkt # 35    Filed  06/13/18    Page 5 of 12

7012.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[7] A formulaic recitation of the elements of a cause of action does not suffice.[8]

Judgments can preclude relitigation of the claims or issues adjudicated. Federal law governs the preclusive effect of a federal court's judgment that adjudicates claims based on federal law.[9]

Claim preclusion (*res judicata*) generally does not apply in dischargeability proceedings in bankruptcy, because certain exceptions to dischargeability are questions for the bankruptcy court in the first instance.[10]

Application of issue preclusion (collateral estoppel) requires a prior determination that: (1) resolved an identical issue; (2) actually litigated the identical issue; (3) necessarily decided the identical issue; (4) is final and resolved the issue on its merits; and (5) occurred between parties in privity to one another, in the former

---

[7] *Compton v Countrywide Financial Corp.*, 761 F.3d 1046, 1054 (9th Cir. 2014) (internal quote marks omitted).

[8] *Id.* (quoting *Bell Atl. v. Corp. v. Twombly* (550 U.S. 544, 570 (2007)).

[9] *Stoll v. Gottlieb*, 305 U.S. 165, 170–71 (1938) (discussing res judicata in general); *Trevino v. Gates*, 99 F.3d 911, 923 (9th Cir. 1996) (issue preclusion): Restatement (Second) of Judgments § 87 ("Federal law determines the effects under the rules of res judicata of a judgment of a federal court.").

[10] *Grogan v. Garner*, 498 U.S. 279, 284 (1991).

proceeding.[11] Additionally, courts must consider whether preclusion would be fair and consistent with public policy in light of the circumstances of each case.[12]

## III. DISCUSSION

### Section 523(a)(19) of the Bankruptcy Code

Section 523(a)(19) provides that the bankruptcy discharge does not apply to a debt that:

> (A) is for—
>    (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
>    (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
> (B) results, before, on, or after the date on which the petition was filed, from—
>    (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
>    (ii) any settlement agreement entered into by the debtor; or
>    (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

Section 523(a)(19) establishes that a debt is not dischargeable if both of two elements are satisfied. First, the debt must be "for" a securities law violation or fraud in connection with the sale of a security. Second, the debt must "result from" some

---

[11] *Khaligh v. Hadaegh (In re Khaligh),* 338 B.R. 817, 824 (B.A.P. 9th Cir.2006).

[12] *Id.* at 824–25.

7

judicial or administrative proceeding or a settlement agreement.[13]

Section 523(a)(19) applies here.

First, Lyndon's debt is for a securities law violation. The SEC's complaint alleged violations of the federal securities laws. Lyndon agreed in the Consent that the facts alleged in the SEC's complaint would be deemed true for purposes of the district court's determination of disgorgement, prejudgment interest, and civil penalty, and that he would "pay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3)." Thus, Lyndon's debt is "for" securities law violations.

Second, the Money Judgment was entered in judicial proceedings before the district court.

Lyndon challenges the Money Judgment on many grounds.[14] But it is unquestionably a valid judgment of the district court. The district court denied Lyndon's repeated motions to challenge the Consent, the SEC's litigation conduct, and the Money Judgment, and the Court of Appeals has affirmed it. This court cannot overturn or question the Money Judgment.

---

[13] *Tradex Glob. Master Fund Spc Ltd. v. Chui*, 559 B.R. 520, 524 (N.D. Cal. 2016).

[14] Dkt. 19, 32.

U.S. Bankruptcy Court - Hawaii   #18-90005   Dkt # 35   Filed  06/13/18   Page 8 of 12

Lyndon also argues that the Consent does not establish that debt evidenced by the Money Judgment was "for" securities violations because he neither admitted nor denied the allegations of the complaint. But this takes one phrase of the Consent out of context and ignores many other provisions of the consent. Most importantly for present purposes, Lyndon expressly consented to the entry of a judgment against him for "disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 20(d) of the Securities Act, 15 U.S.C. §77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. §78u(d)(3)." There can be no doubt that the Money Judgment based on the Consent is "for" securities law violations.

### Preclusive Effect

In a case such as this one, it is unnecessary to analyze whether the judgment has preclusive effect.[15] The Consent itself makes it clear that the Money Judgment is "for" securities law violations.

---

[15] *Tripodi v. Welch*, 810 F.3d 761, 767 (10th Cir. 2016) (holding that a default judgment satisfies § 523(a)(19) even if it might not have preclusive effect under other subsections of § 523); *Simon v. Boccarsi (In re Boccarsi)*, 578 B.R. 800, 811-12 (Bankr. N.D. Ill. 2017); *Voss v. Pujdak (In re Pujdak)*, 462 B.R. 560 (Bankr. D.S.C. 2011); *see also Meyer v. Rigdon*, 36 F.3d 1375, 1381-82 (7th Cir. 1994) (holding that "Congress pre-empted the common law collateral estoppel doctrine when it enacted section 523(a)(11)," the language of which tracks §523(a)(19)).

Under section 523(a)(19), a debt for violation of a securities law or for fraud committed in connection with the purchase or sale of a security is nondischargeable once the judgment is entered, regardless whether any issues were "actually litigated." Section 523(a)(19) may apply even when there is no collateral estoppel, and without regard to the law of the jurisdiction in which the prior judgment was entered. *See* 4 Collier on Bankruptcy ¶ 523.27[1] (Richard Levin & Henry J. Sommer eds., Lawrence P. King ed., 16th ed.).

U.S. Bankruptcy Court - Hawaii   #18-90005   Dkt # 35   Filed  06/13/18   Page 9 of 12

Analysis of preclusion may be necessary in cases where it is not clear that the debt is "for" securities law violations. For example, where the debt is based on a settlement between the parties made after a court decided that notes issued by the defendant to the plaintiff were "securities," but before the court decided any other elements of a securities violation, the court's partial judgment did not establish that the debt was "for" securities law violations.[16] Similarly, where an SEC order establishes that the defendant violated the securities law, but does not establish that the plaintiff is a victim of those violations, section 523(a)(19) is not satisfied.[17] But preclusion analysis is not necessary here; the terms of the Consent make it crystal clear that Lyndon's debt is "for" securities law violations.

Lyndon cites *In re Tills*[18] in support of his position, but the facts of that case are materially different from the facts of this case. In that case, the plaintiff initiated an arbitration against the defendant, claiming California securities violations, common law fraud, and negligent misrepresentations. On the eve of the arbitration hearing, the parties entered into a settlement agreement under which neither party admitted fault or liability, the defendant agreed to pay the plaintiff a sum of money, and the parties

---

[16] *Paik v. Lee (In re Lee)*, 536 B.R. 848, 859 (Bankr. N.D. Cal. 2015).

[17] *Tradex Glob. Master Fund SPC Ltd. v. Chui*, 559 B.R. 520, 524 (N.D. Cal. 2016).

[18] *Mollasgo v. Tills (In re Tills)*, 419 B.R. 444 (Bankr. S.D. Cal. 2009).

exchanged mutual releases. The defendant made no payments to the plaintiff and instead filed a chapter 7 bankruptcy petition. The plaintiff objected to the discharge of the debt under the settlement agreement, based on section 523(a)(19). The bankruptcy court held that the settlement agreement did not establish that the defendant's debt was "for" securities law violations because "the Settlement Agreement contains no discussion of the basis for non-dischargeability and, instead, contains a provision expressly stating that fault and liability are not conceded. The Court thus finds that the Settlement Agreement does not independently establish that Debtor committed securities violations and does not independently satisfy section 523(a)(19)(A)."[19] In this case, however, Lyndon expressly consented to the entry of a money judgment based on specified provisions of the federal securities laws.

### Civil Penalty

Lyndon's civil money penalty debt to the SEC is independently excepted from discharge under section 523(a)(7). This section excepts from discharge a debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." Lyndon does not challenge this portion of the SEC's motion.

---

[19] *Id.* at 452-53.

U.S. Bankruptcy Court - Hawaii    #18-90005    Dkt # 35    Filed  06/13/18    Page 11 of 12

## IV. CONCLUSION

The motion is granted. Lyndon's complaint is dismissed. Because Lyndon could not amend his complaint in a way that would salvage his case, leave to amend is denied as futile.

### END OF ORDER